# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAHMOOD ALIZADEH, On Behalf of Himself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. 1:13-cv-00537 ) |
| v. | ) Honorable Sara L. Ellis ) ) |
| TELLABS, INC., TIMOTHY J. WIGGINS and THOMAS P. MINICHIELLO, | ) ) ) |
| Defendants. | ) ) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RULE 11 SANCTIONS

David F. Graham
James W. Ducayet
Melanie E. Walker
Kathleen L. Carlson
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendants*

## INTRODUCTION

In *City of Livonia Employees' Retirement System v. Boeing Co.*, 711 F.3d 754 (7th Cir. 2013), the Seventh Circuit had occasion to provide cautions to the bar regarding inappropriate uses of confidential witnesses to stave off motions to dismiss in putative securities fraud class action cases. In *Boeing*, a central confidential witness was interviewed by an investigator—not by attorneys—and then had demonstrably false statements attributed to him, which he later categorically denied. *See id.* at 759-60. The result was that the Seventh Circuit held that Rule 11 of the Federal Rules of Civil Procedure had been violated and that sanctions were appropriate. *Id.* at 761-62. Rather than having learned the lessons of *Boeing* (which was decided on March 26, 2013, well before the Amended Complaint ("AC") was filed in this case on June 3, 2013), this case replicates the sanctionable conduct. Accordingly, because the core of Plaintiffs' case here also is built upon a lie, Defendants bring this motion for sanctions.

At the core of Plaintiffs' allegations are those attributed to "CW 1." The only Tellabs employee who meets the AC's description of CW 1 is Stan King. (Declaration of Timothy J. Wiggins ("Wiggins Decl."), Ex. A, at ¶4.) According to Plaintiffs, King purportedly said to someone that in 2010 he had provided internal projections showing that Tellabs' sales to AT&T were going to "go away to near zero." (AC ¶67.) Plaintiffs' brief in opposition to Defendants' motion to dismiss repeats this refrain again and again. (*See, e.g.,* Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Response" or "Resp.") at 12-13 ("In CW 1's quarterly sales account reports … CW 1 projected that AT&T sales would continue to decline dramatically, going to $0…."); 17 ("quarterly reports which were provided to Wiggins showed that AT&T sales would be dwindling to $0"); 21 ("Plaintiffs have pled with specificity that Defendants were informed by the beginning of the Class Period that AT&T sales [were]

1

declining and going to '0' (¶67)…").)

This contention is demonstrably false. Internal Tellabs documents show that throughout 2010, King was projecting sales to AT&T of hundreds of millions of dollars. (*See* p. 4, *infra.*) Indeed, even as of the end of the putative class period, in April 2011—after Tellabs itself had announced declining sales to AT&T (*see* AC ¶¶21, 24-25, 130, 136)—King was still projecting 2011 sales to AT&T of between $155 million and $215 million. (*See* p. 4, *infra.*)

Nor can any purported interview of King serve as an excuse for these patently false allegations, because King himself disavows them. To begin with, King has informed Defendants' attorneys that he did not speak to any attorney representing Plaintiffs, but rather only to an investigator—precisely the practice condemned in *Boeing* because it so easily lends itself to plausible deniability manipulation. *See* 711 F.3d at 760-62. Moreover, in his interview with Defendants' attorneys, King disavowed ever issuing sales projections in 2010 showing that AT&T sales would decline to zero. But, like the confidential witness in *Boeing,* King was never shown a copy of the AC or the statements attributed to him, despite the Seventh Circuit's admonition in *Boeing*, and despite the fact that publicly available documents show that Tellabs had actual sales of approximately $127 million to AT&T in 2011, which should have been a red flag to Plaintiffs' attorneys regarding King's supposed projections. *See* Form 10-K at 6, 28 (Feb. 28, 2012), *available at* http://www.sec.gov/Archives/edgar/data/317771/000119312512085797/d269957d10k.htm; *see also Boeing*, 711 F.3d at 760, 762.

Because Plaintiffs' allegations are not grounded in an "inquiry reasonable under the circumstances" and are unlikely to "have evidentiary support after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b), Defendants request that sanctions be imposed on Plaintiffs and Plaintiffs' counsel, including dismissal of the AC with prejudice.

**STATEMENT OF FACTS**

The original complaints in this consolidated action were filed on January 23, 2013 and February 8, 2013, and purported to assert claims on behalf of Tellabs' shareholders between October 26, 2010 and April 26, 2011. (Dkt. 1 ¶1; Dkt. 9.1. ¶1.) After Lead Plaintiffs were appointed on April 2, 2013, Plaintiffs were given until June 3, 2013 to file a consolidated amended complaint. (Dkt. 30.)

The AC purports to extend the Class Period back to June 9, 2010 and alleges that certain statements made by Defendants in June, July, and August 2010 were false and misleading. In support of these new claims, Plaintiffs included in the AC allegations attributed to CW 1. CW 1 is described in the AC as "the Director of Sales for the AT&T wireless account from 2006 through 2011. From 2009 through 2011 CW 1 was promoted to the Director of all AT&T sales. (AC ¶62.) CW 1 allegedly reported to, among others, "Chuck Bernstein, Vice-President of Sales for Wireline." (*Id*.) The former Tellabs employee who meets this description is Stan King. (Wiggins Decl., Ex. A at ¶4.) The key allegation attributed to King in the AC is that he "issued quarterly sales account reports, which he submitted to his supervisors, which [were] supposed to end up with Wiggins and [were] to be released to the public." (AC ¶67.) Plaintiffs allege that in one such report "from 2010," King projected that AT&T sales going to "go away to near zero.'" (*Id*.) Plaintiffs cite to this allegation no fewer than eight times in their Response brief in an attempt to show that they have adequately alleged that Defendants' statements regarding current and prospective sales to AT&T were false and made with scienter, and that Defendants' motion to dismiss should be denied. (*See* Resp. (Dkt. 52) at 6, 7, 12, 13, 17, 21.)

But this "going away to near zero" projection does not exist. To the contrary, internal documents show that King's projections during the putative Class Period—from June 2010,

3

August 2010, November 2010, and April 2011—forecast substantial sales to AT&T in 2010 and beyond:

- On June 4, 2010 (i.e., just prior to the beginning of the Class Period), King sent an e-mail to Bernstein and CEO Rob Pullen forecasting AT&T revenues for the third quarter of 2010 at $140 million and for the fourth quarter of 2010 at $120 million. (Declaration of Melanie Walker ("Walker Decl."), Ex. B at ¶2 & Ex. 1.)

- On August 17, 2010, King issued projections that projected *2011* revenue from AT&T in the $160 million (worst case) to $400 million (best case) range for the 8800, 8600, and wireless-related 5500 products. (*Id.* at ¶3 & Ex. 2.)

- On November 10, 2010, King provided a three-year forecast for sales to AT&T. That forecast projected *2011* sales to AT&T in the $184.5 million to $353.4 million range, and projected sales to AT&T of between $113 million and $264 million all the way out to *2013*. (*Id.* at ¶4 & Ex. 3.)

- In a North American Sales Operations Review presentation on April 13, 2011—near the end of the Class Period and *after* Tellabs itself had disclosed a projected decline in sales to AT&T (*see* AC ¶¶21, 24-25, 130, 136)—Bernstein presented King's projections for 2011 sales to AT&T as between $155 million and $215 million, with the actual forecast being $193 million. (Walker Decl., Ex. B at ¶5 & Ex. 4.)

As is clear from all four sets of projections described above, King's projections never come remotely close to forecasting sales declining to "near zero"—including those made near the end of the Class Period, and many months *after* Defendants' purportedly false and misleading statements.[1] (*See also* Wiggins Decl., Ex. A at ¶6 (affirming that at no time during 2010 did he receive reports projecting that sales to AT&T would decline to near zero).)

Moreover, on June 27, 2013, attorneys for Defendants interviewed King, and he

---

[1] The AC is noticeably vague as to the timeframe for King's projections (i.e., the time period that the projections purportedly forecast that sales to AT&T would decline to nearly zero), but the AC's allegations are designed to suggest that the internal projections purportedly prepared by CW 1 were related to 2010 or 2011 sales. (*See, e.g.*, AC ¶¶68, 71.) As it turns out, the AC's failure to identify a specific time period is irrelevant, because even projections through 2013 (made in November 2010—months after the purportedly misleading statements), do not reflect AT&T revenue declining to nearly zero, and the projections for 2011 *certainly* do not do so. (Walker Decl., Ex. B at ¶¶ 2-5 & Exs. 1-4.)

4

disavowed ever providing projections during 2010 of AT&T sales going to "near zero."[2] First, King denied that Tellabs was told by AT&T in 2010 that it would no longer buy its products. King said that the situation with AT&T in 2010 was very unpredictable, including what impact competitive offerings would have on AT&T's purchases of Tellabs products. (Walker Decl., Ex. B., at ¶7.) King stated that AT&T did not provide Tellabs any visibility as to its plans, including what it planned to buy from Tellabs in the next quarter (much less in periods beyond). (*Id.*)

Second, King denied issuing projections showing AT&T sales declining to zero or "near zero" in 2010, including for the 8800 product, which is a focus of the AC and the Response to Defendants' motion to dismiss. (*Id.* at ¶8; *see also, e.g.,* Resp. at 14 (stating that as of June 10, 2010, Tellabs had "lost its 8800 product"); 15 (stating that as of July 27, 2010, "Tellabs knew that AT&T was not going to continue purchasing the 8600/8800"); AC ¶¶8, 79, 91, 100, 105.) Indeed, King recalled that AT&T continued to buy 8800s from Tellabs in 2011. (Walker Decl., Ex. B at ¶8.)

Third, and most significantly, King stated that he listened to most of Tellabs' conference calls or read the transcripts and did not recall ever hearing anything he thought was not true. King believed that the guidance provided to the market during the putative Class Period was *consistent* with his own projections. (*Id.* at ¶9.) And King told Defendants' attorneys that he told Plaintiffs' investigator to read the conference call transcripts if she wanted an *accurate* understanding of events at Tellabs. (*Id.*)

Finally, King told Defendants' attorneys that he had one 45 minute telephone call with an

---

[2] On October 16, 2013, an attorney for Defendants spoke with King again, and confirmed that he does not recall ever providing projections during 2010 of AT&T sales going to "near zero." (Walker Decl., Ex. B at ¶12.) While King has not been willing to provide Defendants with an affidavit, because he apparently does not want to become further enmeshed in this litigation, the facts as to what the documents show and what he said when interviewed by *attorneys*, demonstrate what is afoot here.

5

individual who represented herself to be an investigator, not an attorney. (*Id.* at ¶10.) King stated that he was never sent a copy of the AC. (*Id.* at ¶11.)

Defendants notified Plaintiffs and their counsel of the deficiencies in the AC and the Response on October 17, 2013, by sending a letter identifying these sanctionable claims, demanding that the AC be withdrawn, and attaching a copy of this Motion. Pursuant to Rule 11, this letter initiated a 21-day period within which Plaintiffs were obligated to cure their deficiencies. As they have not done so, Defendants bring this Motion.

**ARGUMENT**

I.   **Legal Standards.**

Under Federal Rule of Civil Procedure 11, any person who signs, files, submits, or advocates for a pleading thereby certifies that (1) the claims in the pleading "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and (2) the factual contentions in the pleading "have evidentiary support." Fed. R. Civ. P. 11(b)(2)-(3). "In the Seventh Circuit, 'an attorney violates Rule 11 in maintaining a claim that is unwarranted by existing law or has no reasonable basis in fact.'" *Smart Options, LLC v. Jump Rope, Inc.*, 2013 U.S. Dist. LEXIS 17743, at *5-6 (N.D. Ill. Feb. 11, 2013) (citing *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008)).

Rule 11 imposes an affirmative duty to make a "reasonable inquiry" into relevant facts. Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading … an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*…") (emphasis supplied). In order to determine whether sanctions should be imposed, a court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Halim v. Great*

6

*Gatsby's Auction Gallery, Inc.*, 2007 U.S. Dist. LEXIS 21891, at *3 (N.D. Ill. Mar. 12, 2007) (Kocoras, J.) (citation omitted); *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1038 (7th Cir. 1996) (affirming grant of Rule 11 sanctions where plaintiff failed to plead securities fraud with particularity). "A finding of bad faith is not a prerequisite to imposing Rule 11 sanctions." *Halim*, 2007 U.S. Dist. LEXIS 21891, at *4; *see also Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 205 (7th Cir. 1985) (affirming grant of Rule 11 sanctions). "Representations in a filing in a federal district court that are not grounded in an 'inquiry reasonable under the circumstances' or that are unlikely to 'have evidentiary support after a reasonable opportunity for further investigation or discovery' violate Rules 11(b) and 11(b)(3)." *Boeing*, 711 F.3d at 762; *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1028-29 (7th Cir. 1999) (affirming grant of sanctions against counsel who refused to withdraw counterclaim after the affiant whose declaration was the factual basis for the counterclaim disavowed statements attributed to her); *Sanders v. Mid City Salon Res., LLC*, 2008 U.S. Dist. LEXIS 116793, at *9 (N.D. Ill. Sept. 5, 2008) (issuing Rule 11 sanctions where counsel continued to press claim even though he "must have known" that the claim "had no legitimate factual basis" after deposition).

If the Court determines that Rule 11 has been violated, it may impose sanctions "on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed R. Civ. P. 11(c)(1); *Smart Options,* 2013 U.S. Dist. LEXIS 17743, at *6 ("'Sanctions will be imposed if counsel files a complaint with improper motives or without adequate investigation.'") (citation omitted). Monetary and non-monetary sanctions may be imposed under Rule 11, including dismissal of the action with prejudice "where the sanction is sufficient to deter repetition of the misconduct or to deter similar conduct by third parties." *See Jimenez v. Madison Area Tech. Coll.,* 321 F.3d 652, 657 (7th Cir. 2003) (affirming dismissal with prejudice as Rule 11 sanction

7

where plaintiff's claims depended on falsified evidence); *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 554 (1991) (affirming dismissal with prejudice and monetary sanctions under Rule 11 where plaintiffs and counsel failed to conduct a reasonable inquiry before filing suit); Fed. R. Civ. P. 11(c)(4).

## II. Lead Plaintiffs And Their Lawyers Should Be Liable For Sanctions.

Lead Plaintiffs Brian Jensen and Alfredo Acosta and Lead Counsel should be liable for sanctions for presenting allegations in the AC that were not "formed after an inquiry reasonable under the circumstances" and are devoid of "evidentiary support." Fed. R. Civ. P. 11(b)(2) & (3). It is well settled that attorneys who sign and file pleadings without complying with Rule 11 may be sanctioned. Fed. R. Civ. P. 11(c)(4); *see also Boeing*, 711 F.3d 754; *Halim*, 2007 U.S. Dist. LEXIS 21891. Because that is precisely what occurred with respect to the allegations regarding CW 1 in the AC, Lead Counsel should be sanctioned pursuant to Rule 11.

In addition, each of the Lead Plaintiffs themselves ought to incur sanctions for the baseless allegations. Generally, while a party represented by counsel is not held liable under Rule 11 for claims that are legally flawed, "he *is* liable for factual contentions that lack evidentiary support." *Nyitray v. Johnson*, 1998 U.S. Dist. LEXIS 1791, at *39 (S.D.N.Y. Feb. 18, 1998) (emphasis supplied); *see also Espinoza v. Northwestern Univ.*, 2004 U.S. Dist. LEXIS 1203, at *8-9 (N.D. Ill. Jan. 28, 2004). Because there are a multitude of allegations in the AC, as well as sections of Plaintiffs' Response, that are entirely dependent on CW 1's factually unsupported statements, Plaintiffs themselves should also bear liability for the false allegations.[3]

---

[3] This is especially true given that each of the Lead Plaintiffs requested to undertake the responsibilities of serving as Lead Plaintiff, each representing to the Court that they were the "most adequate plaintiff." (Dkt. 18 at 1; Dkt. 23 at 4.) In addition, both Lead Plaintiffs chose their counsel and vouched for their credentials. Lead Plaintiff Jensen represented to the Court that he "has selected the Pomerantz firm as Lead Counsel" and that "[t]he Pomerantz firm is highly experienced in the area of securities litigation and class actions…[a]s a result of the firm's extensive experience in litigation involving issues similar to

8

**III.     Plaintiffs' Allegations Are Devoid Of Any Legitimate Factual Or Legal Basis.**

Plaintiffs' allegations (and assertions in their Response) that Defendants knew from CW 1's projections that AT&T sales were going to "go away to near zero" lack any reasonable basis and in fact are false. As internal documents plainly show, King never prepared, and Defendants never received, reports projecting sales to AT&T declining to near zero. (Wiggins Decl., Ex. A at ¶6; Walker Decl., Ex. B at ¶¶2-5, 8 & Exs. 1-4.) And any attempt by Plaintiffs to rely on statements purportedly made by King fails both procedurally and substantively. As a procedural matter, Plaintiffs' use of statements obtained by an investigator without any attempt by an *attorney* to verify those statements is inexcusable after *Boeing*. *See* 711 F.3d at 762.[4] Substantively, the suggestion that King's internal projection reports contradicted Defendants' public statements during the Class Period is flatly inconsistent with what King himself would say. (*See* p. 5, *supra.*) As such, Plaintiffs are now faced with the same issue that plagued the plaintiffs in *Boeing*—namely, allegations concerning CW 1 that are central to their putative claims that Defendants' statements during the Class Period were false and made with scienter cannot be substantiated. *Id.* at 754.

"Representations in a filing in a federal district court that are not grounded in an 'inquiry

---

those raised in this action, Jensen's counsel has the skill and knowledge necessary to enable them to prosecute this action effectively and expeditiously." (Dkt. 18 at 9.) Likewise, Lead Plaintiff Acosta stated that he "selected experienced and competent counsel" such that "the Class will receive the highest caliber of legal representation." (Dkt. 23 at 7-8.)

[4] Plaintiffs' failure to verify King's statements is particularly egregious in light of publicly-available information inconsistent with Plaintiffs' allegations, which Defendants explicitly referenced in their Motion to Dismiss. (Mot. to Dismiss (Dkt. 41-1), at 31.) Specifically, Tellabs' 2011 Form 10-K, which shows that Tellabs had actual sales to AT&T of approximately $127 million in 2011, is a public document that Plaintiffs could have reviewed prior to the filing the AC. (*See* p. 2, *supra*.) Even if Plaintiffs' lawyers initially failed to review the Form 10-K, Defendants' Motion to Dismiss, filed more than three months ago, clearly identified this disclosure. (Dkt. 41-1 at 31.) Therefore, Plaintiffs have had ample opportunity to consider the magnitude of Tellabs' actual 2011 sales to AT&T, and the glaring inconsistency between them and the statements attributed to CW 1 in the AC, but apparently have failed to verify their allegations with King and retract their erroneous assertions.

9

reasonable under the circumstances' or that are unlikely to 'have evidentiary support after a reasonable opportunity for further investigation or discovery' violate Rules 11(b) and 11(b)(3)." *Boeing*, 711 F.3d at 762. Thus, Rule 11 sanctions are appropriate here. Given Plaintiffs' flouting of the cautions provided by the Seventh Circuit in *Boeing* regarding the use of confidential witnesses, and the centrality of the allegations attributed to CW 1 to Plaintiffs' putative claims, Defendants respectfully request that the Court dismiss this action with prejudice and award such other sanctions the Court believes necessary to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request an award of sanctions pursuant to Federal Rule of Civil Procedure 11 against Lead Plaintiffs and Lead Counsel for asserting—and continuing to assert even after receiving notification of the true facts—legally and factually baseless allegations in the AC.

Dated: November 12, 2013

Respectfully submitted,

/s/David F. Graham
One of the Attorneys for Defendants

David F. Graham
James W. Ducayet
Melanie E. Walker
Kathleen L. Carlson
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      Melanie E. Walker, an attorney, hereby certifies that on November 12, 2013, she caused a true and correct copy of the foregoing to be filed electronically with the Clerk of Court to be filed and served upon all parties via the Court's CM/ECF system.

                                             /s/Melanie E. Walker