UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAHMOOD ALIZADEH, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 13 C 537 ) ) Judge Sara L. Ellis |
| TELLABS, INC., TIMOTHY J. WIGGINS, and THOMAS P. MINICHIELLO | ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Lead Plaintiffs Brian Jensen and Alfredo Acosta bring this case on behalf of themselves and a putative class of similarly situated individuals who purchased securities in Tellabs, Inc. ("Tellabs"). Plaintiffs allege that Tellabs and two of its officers, Timothy Wiggins and Thomas Minichiello, made false or misleading representations with regard to Tellabs' business operations which caused Tellabs' stock price to be artificially inflated. Specifically, Plaintiffs allege that Defendants misrepresented the viability of Tellabs' products and failed to promptly disclose that Tellabs had lost the business of its primary customer, AT&T. In doing so, Plaintiffs contend that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, codified as 15 U.S.C. § 78j(b) and t(a), and SEC Rule 10b-5, 17 U.S.C. § 240.10b-5. Now before the Court are Defendants' motion to dismiss the Amended Complaint for failure to comply with the heightened pleading standards that govern claims for securities fraud. [42] Because Plaintiffs fail to specify which of Defendants' statements were false or misleading and fail to connect each alleged misstatement with a contrary allegation of fact, the Amended Complaint is dismissed without prejudice.

# BACKGROUND[1]

Tellabs designs and develops telecommunications network products, which it sells primarily to telecommunications service providers. Tellabs stock is traded publicly on the National Association of Securities Dealers Automated Quotations Market ("NASDAQ"). Plaintiffs seek to represent a class of individuals who purchased Tellabs stock between June 9, 2010 and April 26, 2011 (the "Class Period"). Defendant Timothy Wiggins served as Tellabs' Chief Financial Officer and Defendant Thomas Minichiello was Tellabs' Chief Accounting Officer during the Class Period.

At the beginning of the Class Period, AT&T was Tellabs' largest customer. But this was likely to change, as AT&T announced in 2009 that it intended to buy its telecommunications products from "domain suppliers," rather than from Tellabs. But as the iPhone was introduced and the mobile internet market ballooned, AT&T experienced "an explosion of demand for bandwith in 2010." Doc. 36 ¶ 70. To satisfy demand, AT&T purchased large quantities of Tellabs products, including the 5500 Digital Cross-Connect (the "5500"). By 2010, the 5500 was nearing obsolescence, but AT&T purchased $120 million worth of the devices in 2010 in order to meet this high demand. In light of AT&T's earlier announcement and the benefit of hindsight, these sales constituted a temporary fix for AT&T rather than an emerging trend. Tellabs acknowledged as much during the Class Period. In October of 2010, when asked on an earnings conference call whether sales of 5500s would continue to grow in 2011, Wiggins

---

[1] The facts in the background section are taken from the Amended Complaint and documents incorporated by reference therein and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* The Court may also take judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

responded, "lightning probably won't strike twice. I don't think so." Doc. 41-2, Ex. 8 at 18.[2] But Tellabs also asserted that as of June of 2010, AT&T continued to purchase its products at a steady rate.

With the 5500 nearing obsolescence, Tellabs sought to develop a product to satisfy AT&T's demand in its next generation network—known as "4G." Tellabs initially invested in developing the 8900, which was intended to replace the 8800, its "bread and butter" product. Doc. 36 ¶ 7. But Tellabs switched focus, cutting its research and development budget in the 8900 and investing instead in products first developed by WiChorus, Inc., a company Tellabs acquired in December of 2009. But Tellabs' WiChorus product was slow to roll-out and ultimately did not succeed in recapturing Tellabs' market share, resulting in the stock price losing its value. Exacerbating Tellabs' problems, a new competitor, Alcatel-Lucent, emerged during the first half of 2010 and began offering AT&T a pure ethernet product to support its network. Alcatel-Lucent ultimately won AT&T's business and took market share from Tellabs.

Plaintiffs allege that Tellabs made several material misstatements with regard to the viability of its products and the likelihood that it could retain AT&T as a customer. Plaintiffs allege that these misstatements began on June 9, 2010, when a representative from Tellabs told analysts and investors, "[w]e continue to compete for future business at AT&T and other companies. . . . The solution we're providing AT&T has a longer life and a longer runway in the network than the market has given it credit for." Doc. 36 ¶ 101. The following day, Wiggins stated, "[w]hat we're seeing in the current term is no degradation of the orders from the customer, but in fact we're seeing stronger orders than we expect so." Doc. 36 ¶ 103. But Tellabs simultaneously warned that it could lose business to Alcatel-Lucent in the long term

---

[2] The Court may consider the transcript of this call as it was quoted at length in the Amended Complaint and is central to the Amended Complaint. *See* Doc. 36 ¶ 122; *Hecker*, 556 F.3d at 582–83.

because AT&T "would prefer over time to put a pure Ethernet system in because . . . pure Ethernet is probably a third less expensive." Doc. 36 ¶ 103. On this June of 2010 earnings call, Tellabs also projected that its WiChorus product would be available in 2011.

In July of 2010, Tellabs' CEO Robert Pullen stated on an investor conference call, "[w]hile I can't speak for our customer, we do know that AT&T is trialing a third vendor in its mobile back-haul networks. At the same time, Tellabs sees good demand from AT&T. We're in the network now. We're seeing growth on the embedded base. And we believe we offer the lowest risk and the least cost evolution to the long-term evolution in the mobile backhaul." Doc. 36 ¶ 113. In August of 2010, Pullen reiterated, "[o]ur orders still remain very good and we are approved in their mobile backhaul and obviously, it's growing demand there. As I shared on the earnings call, we do know that they are about to introduce a new vendor into the mix, but we continue to be deployed in their current business and it's a big and growing marketplace. We will continue to do well there." Doc. 36 ¶ 116. In October of 2010, Tellabs announced its third quarter earnings, including total revenue of $429 million, within the guidance range it had predicted three months earlier. Tellabs simultaneously released guidance for the fourth quarter of 2010, estimating revenue between $410 and $430 million.

Plaintiffs allege that "[t]he house of cards began to crumble" on January 25, 2011. Doc. 36 ¶ 125. On this date, Tellabs reported $410 million in earnings for the fourth quarter of 2010, at the low end of its guidance range. But Tellabs explained that this total included an accounting change that resulted in Tellabs recognizing $20.8 million in revenue that it otherwise would not have recognized until the first quarter of 2011. Wiggins acknowledged on January 25, 2011, "when we set the guidance and provided it to you in October, we did anticipate the change in this distribution arrangement with the customer." Doc. 36 ¶ 128. That same day, Tellabs also

released disappointing guidance for the first quarter of 2011, estimating revenues between $315 and $335 million. Tellabs' stock price declined by almost twenty percent on that day.

On April 26, 2011, the last day of the Class Period, Tellabs revealed that it collected $322 million in revenues during the first quarter of 2011, again within the guidance range. Tellabs announced that its declining revenues were driven largely by decreasing sales in North America, specifically to AT&T. Tellabs' stock price dropped by nine percent on April 26, 2011.

Plaintiffs contend that Tellabs also misrepresented its relationship with a company called Juniper. A Tellabs representative stated in August of 2010, "[a]lso recently I was speaking with Kevin Johnson at Juniper and we have our products interoperating around the world for customers as well. And so our equipment's in their lab, we're doing interoperability testing with them for customers around the world, including AT&T." Doc. 36 ¶ 117. Plaintiffs allege that this statement "was clearly false and misleading" because Tellabs never formalized a business relationship with Juniper. Doc. 36 ¶ 118.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads

5

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

On top of the burden imposed by Rules 12(b)(6) and 9(b), Congress further heightened the pleading standards on securities fraud claims when it enacted the Private Securities Litigation Reform Act ("PSLRA"). Congress created this standard to check pleading abuses in private securities fraud suits. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (*Tellabs II*), 551 U.S. 308, 313–14, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). In order to properly allege that defendants misrepresented or omitted material facts, the PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In pleading scienter, the PSLRA requires that plaintiffs, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-

4(b)(2). For an inference to be "strong," it must be "cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs II*, 551 U.S. at 324.

## ANALYSIS

In moving to dismiss the Amended Complaint, Tellabs raises seven principal arguments. The Court focuses on the first argument, that Plaintiffs have failed to satisfy the PSLRA's heightened pleading standards because they have not specified which of Tellabs' statements during the Class Period were false, nor explained exactly why such statements are false. The Court agrees.

The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and all facts that form the plaintiff's basis for believing that the statement is misleading. 15 U.S.C. § 78u-4(b)(1). Courts around the country have made clear that a complaint does not satisfy the PSLRA's pleading standards when it quotes the defendant at length and then uses a stock assertion that the statement is false or misleading for reasons stated in an earlier paragraph. For example, in *Boca Raton Firefighters & Police Pension Fund v. Bahash*, the Second Circuit dismissed a complaint for failing to satisfy the PSLRA because it "consist[ed] in large part of large block quotations with italicized text, followed by a passage that reads '[t]he statements referenced in [the preceding paragraphs] were each materially false and misleading when made for the reasons set forth in ¶ 256 and the factual data contained throughout this Complaint." 506 F. App'x 32, 38 (2d Cir. 2012) (second and third alterations in original). Likewise, in *Conlee v. WMS Industries, Inc.*, a court in this district dismissed the complaint wherein "the heart of the complaint, the section titled 'Defendants' False and Misleading Statements Made During the Class Period,' is a sixteen page mash-up of block quotes, snippets, parentheticals, and Lead Plaintiff's

7

characterizations of alleged statements made by one or more Defendants." No. 11 C 3503, 2012 WL 3042498, at *4 (N.D. Ill. July 25, 2012).

That is precisely what Plaintiffs do here. To start, Plaintiffs allege that statements were false only after quoting Tellabs representatives at length. For example, paragraph 130 of the Amended Complaint includes a block quote of the January 25, 2011 investor conference call which covers more than five single spaced pages. Doc. 36 at 47–53. The Court is therefore left to speculate which statements Plaintiffs allege are inaccurate. Plaintiffs' use of bold and italics to emphasize certain statements does nothing to clarify Plaintiffs' assertions of false statements. *See Bashash*, 506 F. App'x. at 38; *Lauria v. Biosante Pharm., Inc.*, 968 F. Supp. 2d 951, 958 (N.D. Ill. 2013). After quoting transcripts and press releases at length, Plaintiffs merely set out, as the plaintiffs in *Bashash* and *Conlee* did, that these statements were false and misleading for reasons stated earlier in the Amended Complaint. *See* Doc. 36 ¶ 110 ("Tellabs' statements in ¶¶ 101-109 above were false and misleading for the reasons stated in ¶ 16(a)-(j) as well as the statements made by Confidential Witnesses."); Doc. 36 ¶ 124 ("The statements contained in ¶¶ 101-123 above were materially false and/or misleading when made for the reasons stated in ¶ 16(a)-(j) and the statements made by the Confidential Witnesses."); Doc. 36 ¶ 135 (" The statements contained in ¶¶ 101-134 above were materially false and/or misleading when made for the reasons stated in ¶ 16(a)-(j) and statements made by Confidential Witnesses.").

Several courts have described this pleading style as "puzzle pleading," because it requires the Court and the defendant to piece together exactly which statements Plaintiffs are challenging and what allegations contradict those statements. *Conlee*, 2012 WL 3042498, at *4. In the context of the PSLRA, Courts have found that this practice "improperly place[s] the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding

adverse facts." *Id.* (alteration in original) (quoting *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 984 (E.D. Wis. 2009)). "[C]ourts have repeatedly lamented" this practice of requiring the Court to determine exactly which statements plaintiffs allege are misleading and which alleged facts support plaintiffs' claims. *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1244 (N.D. Cal. 1998). Puzzle pleading has also been described as a "not uncommon mask for an absence of detail." *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1011 (N.D. Ill. 2004) (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir.1997)). As in *Conlee*:

> [t]he net effect of the pleading's format is to leave the reader—whether Defendants or the court—jumping from page to page in an attempt to link the alleged statements to the background that supposedly makes them false or misleading. Even this activity might be tolerable if the statements themselves were clearly identified, but as noted above, they are not. Rather, it is frequently difficult to discern where the supposedly challenged statements end and the context or characterization begins.

*Conlee*, 2012 WL 3042498 at *4. The imprecise nature of the Amended Complaint not only makes the Court's job more difficult, but it also leads to increased discovery costs, as the parties are likely to incur costs examining irrelevant issues. *Id*.

The PSLRA requires plaintiffs not only to identify specific false or misleading statements, but also to explicitly connect those statements to factual allegations demonstrating that they are false. *See Bashash*, 506 F. App'x at 38 (holding that the complaint did not sufficiently connect the allegedly false statements with contrary allegations: "Needless to say, asking the Court to assess the truth of facts in light of 'the factual detail contained throughout this Complaint,' does not comport with our exhortation that plaintiffs 'must demonstrate with specificity why and how' each statement is materially false or misleading." (citation omitted)); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (dismissing the complaint because "the factual particularity of the first 175 paragraphs is not connected to the otherwise generally pled claim in any meaningful way"); *In re Alcatel Sec. Litig.*, 382 F. Supp.

9

2d 513, 531–32 (S.D.N.Y. 2005) (dismissing the complaint because the allegations of fraud and the alleged misstatements did "not connect with sufficient particularity to meet the Rule 9(b) pleading requirements"); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 842 (N.D. Cal. 2000) (dismissing the complaint, stating, "plaintiffs have left it up to defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons they are false or misleading"). Directly contrary to the practice of puzzle pleading, the PSLRA "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). By failing to identify exactly which facts controvert each specific false or misleading statement, Plaintiffs fall short of the PSLRA's pleading standard.

The Court finds that Plaintiffs have not satisfied the applicable pleading standards because the Amended Complaint does not identify with specificity which statements Plaintiffs alleges are false, nor does it set out why Plaintiffs believe each individual statement is false. The Court affords Plaintiffs another opportunity to amend the Amended Complaint in order to comply with all applicable pleading standards. *See Conlee*, 2012 WL 3042498 at *5; *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, No. 10 C 7031, 2012 WL 1030474, at *19 (N.D. Ill. Mar. 27, 2012); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d at 1280.

## CONCLUSION

For the reasons set forth above, the Amended Complaint [36] is dismissed without prejudice. Plaintiffs are given until July 1, 2014 to file a Second Amended Complaint in conformity with this Opinion and Order.

Dated: June 16, 2014

SARA L. ELLIS
United States District Judge